IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ILLINOIS

**FILED**

JUL 1 8 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

(1) Bo MacLeod Barnes, an individual, )
)
Plaintiff, )
)
v. )
) CIVIL No. ~~03-LM-82~~
)
Trial Lawyers, Inc. )     05-1199
an informal enterprise )
affecting interstate commerce, )
)
(2). Baker, Miller, Markoff & Krasny, LLC )
acting as a prime host for Trial Lawyers, Inc. )
(3). Aplington, Kaufman, McClintock, )
Steele & Barry, Ltd. Acting as a prime host )
Trial Lawyers, Inc. )
(4). Kevin W. Mortell, a predicate actor )
    whose acts of fraud, mail fraud, and )
    extortion were facilitated by )
    membership in Trial Lawyers, Inc. )
    and employment in the RICO )
    enterprise, Baker, Miller, Markoff )
    & Krasny, LLC )
and )
(5). Robert Steele a predicate actor whose )
    acts of fraud, mail fraud, and )
    extortion were facilitated by )
    membership in Trial Lawyers, Inc. )
    and employment in the RICO )
    enterprise, Aplington, Kaufman, )
    McClintock, Steele & Barry, Ltd. )
)
    Defendants. )

Petition, claim and complaint under authority of 18 U.S.C. § 1964(a)&(c) –
racketeering a.k.a. Civil RICO and for injunctive and declaratory relief ending the
trespass of collateral agents of Trial Lawyers, Inc. via actors including Kevin W. Mortell
and Robert Steele committing various extortionate acts interfering with interstate
commerce and impacting the property and business interests of parties similarly
situated to Bo MacLeod Barnes

Subject matter jurisdictional statement

FEDERAL QUESTION JURISDICTION: 28 U.S.C. § 1331: The federal district court has subject matter jurisdiction to consider this claim under authority of 18 U.S.C. § 1964(a) & (c) and by virtue of sufficient pleadings clearly articulating violations of federal criminal offenses including offenses occurring at 18 U.S.C. §§ 1961, 1962 & 1341.

Statement of *in personam* jurisdiction

Trial Lawyers, Inc., hereinafter the enterprise is an enterprise affecting interstate commerce. See report of the Manhattan Policy Institute, Trial Lawyers, Inc. A Report On the Lawsuit Industry In America, 2003, www.manhattan-institute.org. This court shall determine that the enterprise, to a great extent, may have been constructed not for legitimate business purposes but operates to an extent for purposes of perpetrating frauds and swindles. Baker, Miller, Markoff & Krasny, LLC and Aplington, Kaufman, McClintock, Steele & Barry, Ltd. are local, in state facilitators' schemes of fraud and extortion perpetrated by Trial Lawyers, Inc. This court has *in personam* jurisdiction over predicate actors including Kevin W. Mortell who violated 18 U.S.C. §§ 1961, 1962 & 1341 within the geographic boundaries of the Northern Federal District of Illinois.

Statement of venue

Venue is appropriate in the Northern Federal District of Illinois as the violations of 18 U.S.C. §§ 1961, 1962 & 1341 occurred in the geographic confines of the Northern Federal District of Illinois.

Theory of the case

As articulated in great detail in the report of the Manhattan Policy Institute, Trial Lawyers, Inc. A Report On the Lawsuit Industry In America, 2003, www.manhattan-institute.org, Trial Lawyers have scammed the American People in sum in excess of three Trillion dollars, ($3,000,000,000,000.00+) using sham legal process accomplished by horrendously repetitive frauds designed to make money for agents and servants of Trial Lawyers, Inc. and the people, the Constitution, and Justice be damned.

Excerpts from report of the Manhattan Policy Institute, Trial Lawyers, Inc. A Report On the Lawsuit Industry In America, 2003, www.manhattan-institute.org: Unlike the major corporations in our regular market economy – it remains financially opaque

(the lawsuit industry). Whereas public corporations must disclose their financials in 10-Ks according to SEC regulations, trial lawyers practice in private partnerships that, under the guise of attorney-client privilege, have shielded their financials form public scrutiny. Total tort costs today exceed $200 billion annually, or more than 2% of America's domestic product - a significantly higher percentage than in any other developed nation. Even as the economy has stagnated and the stock market has plunged, the lawsuit industry's revenues have continued to skyrocket. The public tends not to appreciate that the litigation industry is nothing but *big business*. Trial Lawyers, Inc. might well be the most profitable business in the world. The biggest difference between the lawsuit industry and most other industries is that Trial Lawyers, Inc. is in a *noncompetitive market* and that its takings are necessarily zero-sum, since **the industry involves redistribution rather than free exchange.** (They have no investment in plant, inventory, or equipment, and very little labor cost.) The lawsuit industry is slowly creeping into almost every aspect of American life. The national economy struggled again in 2002, as the stock market declined more than 20%, retail sales weakened, and businesses put off new investments. But the lawsuit industry proved resilient, and Trial Lawyers, Inc. recorded a banner year. Free from the threat of antitrust actions, which have never been brought against the lawsuit industry, the industry is frequently organized into cartels. The lawsuit industry even has its own venture capitalists – investors who back firms filing enormous, speculative class action suits with the hope that there will be rich rewards somewhere down the road – and its own secondary financial market, where shares in future legal fees are bought and sold. The impact of predatory litigation is staggering. Asbestos litigation alone has driven 67 companies bankrupt, including many that never made or installed asbestos, costing tens of thousands of jobs and soaking up billions of dollars in potential investment capital. More and more, the industry resembles a *racket* designed to do little more than advance the incomes and interests of its members – everyone else be damned. **Trial Lawyers, Inc. is truly a lucrative – and dangerous – racket.** Once upon a time, the average person blanched at lawyer fees that reached upwards of $500 an hour at many of the best firms. But those high hourly fees are chump change compared with what Trial Lawyers, Inc. is raking in these days. From tobacco settlements to asbestos litigation to class action suits, the industry now boasts fees that

3

can range as high as an astounding $30,000 an hour, turning some members of Trial Lawyers, Inc. into overnight billionaires and providing the capital to bankroll new lawsuit ventures into new markets. Regardless of one's view about the merits of the suits, the mega-fees from the 1998 tobacco settlement were nothing but egregious. Some 300 lawyers from 86 firms will pocket as much as $30 billion over the next 25 years! Class members in a lawsuit against Toshiba for defective laptop computer collected between $100 and $443 in cash and coupons. The take for Trial Lawyers, Inc.: $148 million. In one Texas case, Lawyers sued two auto insurers for over-billing because the insurers rounded up premium bills to the next dollar (a practice that was sanctioned by the state insurance department) and pocketed almost $11 million; policyholders got a paltry $5.50 each. In November of 1999, an Illinois judge awarded a national class of plaintiffs $1.2 billion (yes billion, the big B) in a lawsuit against State Farm Insurance. State Farm had allegedly been "fraudulent" in authorizing the use of generic parts in automobile repairs, even though using generic parts was not only allowed but actually required by some states to reduce insurance costs. The local Illinois judge thus unilaterally overrode the considered policy decisions of many other states' elected officials. (How's that for violating the separation of powers?) <u>Perhaps nowhere are class action suits more pervasive – or more pernicious – than the securities industry.</u> **These actions merely redistribute wealth from one class of shareholders to another.** As former secretary of labor Robert Reich has noted, "The era of big government may be over, but the era of regulation through litigation has just begun."

    A highly prolific racket run by Trial Lawyers, Inc., is the ***debt buying racket***. How the debt buying racket works: Members of Trial Lawyers, Inc., such as are Baker, Miller, Markoff & Krasny, LLC and Aplington, Kaufman, McClintock, Steele & Barry, Ltd. and Kevin W. Mortell and Robert Steele are engaged in the business of buying consumer debt charge-offs. Debt buyers can go to a back room of the Chicago Board of Trade, where worthless bundles of copies of commercial paper are sold at auction. Debt buyers can also rely on resources such as Collins Financial Services, Inc., a.k.a. <u>sales@cfsi.net</u>, Money World Network, foreclosurestore.com, charged-offclearringhouse.com, and <u>loans@money-finance.us</u>, and CollectionIndustry.com. In the state of Illinois, the business of debt buying is a particularly vibrant racket as Trial

4

Lawyers, Inc. has established a "Illinois Creditors Bar Association" located at http://www.ilcba.org/ especially informative in informing parties such as Kevin W. Mortell and Robert Steele in how to cheat the unaware American people by: (1). Buying consumer loan charge-offs. *Installment sales contracts are not negotiable instruments and therefore, not being amenable to holder-in-due-course theories of law, cannot be sold for value. Selling or transferring for value of installments contracts such as are credit card member agreements extinguishes the debt.* (2). Debt buyers bully, harass, threaten and intimidate consumers who no longer owe the credit card debt to exact payments from parties similarly situated to Bo MacLeod Barnes. (3). When debt buyers such as Baker, Miller, Markoff & Krasny, LLC and Aplington, Kaufman, McClintock, Steele & Barry, Ltd. are unsuccessful in extorting money and property from parties such as Bo MacLeod Barnes, the debt buyers prosecute sham legal process by filing frivolous lawsuits against parities similarly situated to Bo MacLeod Barnes. (4). In the sham legal process, the real party in interest is not named as the Bank previously holding the commercial papers has sold the commercial paper for six cents on the dollar to a debt buyer posing as a third party debt collector. The real party in interest, the debt buyer, holders only a copy of evidence of debt which is worthless for reasons articulated *supra*. State court judges are necessary and useful to the debt buyer racket. Judges pass out default judgments *like candy* where the judges are charged with the knowledge that the named plaintiff in the sham lawsuits lack standing to sue and offer no proof of claim of damages and the state judges "hammer" the pro se defendants by compelling, sometimes with threat of imprisonment, the pro se defendant to pay the debt buyers large sums which the state court judges know and understand are not legally owed and even if owed would be owed to the bank holding the dishonored commercial paper and not the debt buyer.

It is time for this major racket affecting all of America to end.

Predicate acts of fraud and extortion detailing who did what, how they did it, what laws were violated, who the victim is, and details of the damages

February 2, 2004, Kevin W. Mortell operating from 29 N. Wacker Dr., 5th Floor, Chicago, IL 60606 prepared and submitted false documents in

violation of 18 U.S.C. § 1961, and O.S. 21, § 453 and then uttered the false documents through the United States Mail service in violation of 18 U.S.C. § 1341. The intent and result of Robert Steele's chicanery was to invite others, including, Bo MacLeod Barnes to rely on the false documents to the detriment parties collectively losing untold millions of dollars to Trial Lawyers, Inc.

## Affidavit

I, Bo MacLeod Barnes, of age and competent to testify, state as follows based on my own personal knowledge:

1. I was contacted by Baker, Miller, Markoff & Krasny, LLC on February 2, 2004. Baker, Miller, Markoff & Krasny, LLC had the intention of collecting an unlawful debt via the United States Mail Service.

2. I was contacted by Baker, Miller, Markoff & Krasny, LLC on June 30, 2004. Baker, Miller, Markoff & Krasny, LLC had the intention of collecting an unlawful debt via the United States Mail Service.

3. Because of ongoing fraudulent interference with my business enterprises and taking money from me under false pretences, Baker, Miller, Markoff & Krasny, LLC and Aplington, Kaufman, McClintock, Steele & Barry Ltd. and Kevin W. Mortell and Robert Steele have damaged my property and business interests.

_____
Bo MacLeod Barnes

STATE OF Illinois            INDIVIDUAL ACKNOWLEDGMENT
COUNTY OF LaSalle

Before me, the undersigned, a Notary Public in and for said County and State on this 13th day of July, 2005, personally appeared Bo MacLeod Barnes to me known to be the identical person who executed the within and foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act.

Given under my hand and seal the day and year last above written.

My commission expires 12-14-05

6

[Notary seal: "OFFICIAL SEAL" THOMAS L. ATKINSON, Notary Public, State of Illinois, My Commission Expires 12-14-2005]

*Thomas L. Atkinson* Notary Public

Remedy sought and prayer for relief

The Federal District Court has a duty to order the dissolution of Baker, Miller, Markoff & Krasny, LLC and Aplington, Kaufman, McClintock, Steele & Barry, Ltd. under authority of 18 USC § 1964(a). The Federal District Court is empowered to order treble damages as remedial to the racketeering activities of "RICO" enterprises and their constituent members under authority of 18 USC § 1964(a)&(c). A jury's determination that Baker, Miller, Markoff & Krasny, LLC and Aplington, Kaufman, McClintock, Steele & Barry, Ltd. as prime hosts for Trial Lawyers, Inc. by and through Kevin W. Mortell and Robert Steele have engaged in a pattern of frauds rising to a level of racketeering requires this court's order to Baker, Miller, Markoff & Krasny, LLC and Aplington, Kaufman, McClintock, Steele & Barry, Ltd. to dissolve and cease operations. A jury's determination that Baker, Miller, Markoff & Kransy, LLC and Aplintgon, Kaufman, McClintock, Steele & Barry, Ltd. by and through Kevin W. Mortell and Robert Steele committed or aided and abetted two or more predicate acts of fraud resulting in defrauding Bo MacLeod Barnes and others similarly situated of property and business interests justly requires ordering Baker, Miller, Markoff & Krasny, LLC and Aplington, Kaufman, McClintock, Steele and Barry, Ltd. and Kevin W. Mortell and Robert Steele to compensate all parties in a sum not less than three times the collective sums of property and losses to businesses.

TRIAL BY JURY DEMANDED

Prepared and submitted by: _____*Bo MacLeod Barnes*_____

Bo MacLeod Barnes

7